### ARCHIBALD FREELAND
#### v.
### HERON, LENOX AND COMPANY.

1812.

---

THIS cause having been argued by WINDER, for the Appellant, and *P. B. Key*, for the Appellees.

*All the judges being present,*

DUVALL, *Justice*, delivered the opinion of the Court as follows :

An account current sent by a foreign merchant to a merchant in this country & not objected to for two years,

FREE-
LAND

v.

HERON &
OTHERS,
——————
is deemed an
account stated,
& throws the
burden of
proof upon
him who re-
ceived & kept
it without ob-
jection.

This case comes up by appeal from the decree of the Circuit Court for the District of Virginia.

The record presents the following state of facts: A bill in equity was filed by Heron, Lenox and Company against Archibald Freeland, the Appellant, in the Circuit Court in the month of December, 1798. It states that the company consisted of Nathaniel Heron, a subject of Great Britain, Samuel Lenox, also a subject of Great Britain, and James Freeland and William Gillin. That articles of co-partnership between the said company and Archibald Freeland, of Virginia, were entered into on the 15th of February, 1789, to commence on the first day of April following, and to continue for five years unless sooner dissolved by mutual consent. It is stipulated by the articles that the business of the co-partnership should be managed and carried on in the town of Manchester, in Virginia, by Archibald Freeland, under the firm of James Freeland. That there should be no advance put on the goods furnished but the charges and commission in Britain, and that all bounties, discounts and abatements which might be received, should be credited. The Complainants in their bill further state that Archibald Freeland had the sole management of the affairs of the company, and the care and custody of the books and funds.

That during the existence of the co-partnership Heron, Lenox and Company remitted to James and A. Freeland goods, wares and merchandize, to the amount of several thousand pounds sterling, and had received some payments, but that a considerable balance remained due to them on account of those remittances: that J. and A. Freeland had been frequently called on to account and pay the balance due. That the firm of J. and A. Freeland had been long since dissolved by mutual consent; and that A. Freeland, retaining all the books and effects of the company, had refused to account and pay the balance due; and they pray relief.

To this bill A. Freeland filed his answer, admitting the co-partnership, as stated, and that the business of the concern had been conducted by him at Manchester, until the 10th day of April, 1795, when by contract the whole of the property of the co-partnery was vested in

him for his own use and benefit upon the conditions therein expressed: and he insists that upon a fair settlement of the accounts between the Complainants and him agreeably to the custom of merchants in London, as stipulated by the said contract, he owes nothing.

FREE-
LAND
v.
HERON &
OTHERS.

It further appears that shipments of merchandize by Heron, Lenox and Company were made from time to time, during the first four years of the concern, amounting in the whole to more than *l* 19,000 sterling, and that remittances were made by A. Freeland in, bills of exchange and country produce during the same period to a large amount; and that in the year 1793 the partnership was dissolved by mutual consent. A. Freeland continued to settle and liquidate the accounts of the firm at Manchester; and in September, 1796, wrote a letter to Freeland and Gillin, of which the following is an extract: "Your claim will be among the first of my debts that is paid—for the indulgence I have met with, I have to thank you, and mean to exert myself in order to pay off the whole as early as possible."

During the pendency of this suit in the Circuit Court, a cross bill was filed by A. Freeland against Heron, Lenox and Company for discovery, which they answered by denying the allegations in the bill without disclosing the evidence sought for. No exception, however, was taken to the answer.

An order had passed directing an account to be stated by a commissioner appointed for the purpose, who reported that there was due from A. Freeland to Heron, Lenox and Company a balance of one thousand one hundred and sixty pounds seventeen shillings and ten pence sterling, to which report, various exceptions were taken by the Defendant.

On the 14th of December, 1809, the cause came on to be heard in the Circuit Court upon the bill, answer and exhibits and the report of the commissioner, when it was adjudged, ordered and decreed that the Defendant, A. Freeland, pay to the Plaintiffs, Heron, Lenox & Co. the sum reported to be due by the commissioner, at certain specified periods, with interest from the first day of June, 1798, and costs: and the cross bill was

FREE-
LAND
*v.*
HERON &
OTHERS.

dismissed with costs.    From which decree the Defend-
ant appealed

The exceptions taken to the report of the commis-
sioner in the court below have been urged on the part
of the Appellant in this court, and may be comprized
under the following heads:

1. That he has not given the Defendant credit for all
the bounties, drawbacks and duties which were allowed
to the Complainants on the purchase and shipment of
the goods in England, which he ought to have allowed
agreeably to the contract of co-partnership.

2. That the commissioner adopted a mode of calcu-
lating interest contrary to the agreement of the parties
in April, 1795, and prejudicial to the Defendant.

3. That he allowed the Complainants a commission
on the sales of produce shipped directly to Cadiz, Lis-
bon and other places, where the property was consigned
directly to persons residing in those several places; by
them sold, and who charged the ordinary commission,
and who remitted the proceeds to the Complainants, in
London.

4. That he has not given credit to the Defendant for
25 hogsheads of tobacco.

There was another exception, but as it was abandon-
ed in the argument by the counsel, it will not be no-
ticed.

With respect to the first, third and fourth exceptions,
the record does not furnish the evidence necessary to
enable the court to form a correct decision from the
facts.   The positive assertions of the Appellant are de-
nied by the Appellees; and in proof both are equally
defective.

The Appellant claims a credit of l 764 10 5 sterling
on account of bounties, drawbacks and discounts: he
has been allowed upwards of l 300 sterling, and the Ap-
pellees deny that he is entitled to more credit than is
given, averring that more has not been received by

them. Each insists that the *onus probandi* ought to be thrown on his adversary.

It is proper to observe that it appears by the record that Heron, Lenox and Company furnished A. Freeland with an account current annually for the four first years of their transactions, and that no objection was made to them. This circumstance, combined with the promise contained in A. Freeland's letter of September 1796 to pay the whole balance due, affords room for the application of a rule of the Chancery Court and of merchants to decide the controversy. It is this: When one merchant sends an account current to another residing in a different country, between whom there are mutual dealings, and he keeps it two years without making any objections, it shall be deemed a stated account, and his silence and acquiescence shall bind him, at least so far as to cast the *onus probandi* on him.

The same rule is applicable to the third exception. After an acquiescence of several years the account is considered as binding upon him, as he has failed to falsify the allegations of the Appellees that the shipments of produce to Cadiz, Lisbon and Bourdeaux were made pursuant to their orders and under their superintendance.

He has failed also to prove that he is entitled to the credit insisted on in his fourth exception. To be entitled to the credit it is incumbent on him to prove that the 25 hogsheads are exclusive of the 80 hogsheads of tobacco shipped in the Mercury. The record affords no testimony whatever.

With respect to the second exception, it is considered by this Court that the Circuit Court erred in sustaining the report of the commissioner as to the manner of stating the account between the parties. The commissioner adoped the mode establhshed in Virginia, and which it is believed prevails generally throughout the United States: but by the written agreement of the parties in April, 1795, it is stipulated that the interest shall be charged *agreeably to the custom and manner of settling accounts in London.* In all other respects the opinion of the Circuit Court is affirmed.

FREE-
LAND
*v.*
HERON &
OTHERS.

It is therefore the opinion of this Court that the decree of the Circuit Court with respect to the second exception be reversed, and that the cause be remanded to the Circuit Court, in order that an account may be taken pursuant to the written agreement of the parties—agreeably to the custom and manner of settling accounts in London.