Note.—See under (1) 4 C. J. p. 900, §2869; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 73. (2) 4 C. J. p. 799, §2757; 21 R. C. L. p. 573; 3 R. C. L. Supp. p. 1170; 4 R. C. L. Supp. p. 1421; 5 R. C. L. Supp. p. 1164; 6 R. C. L. Supp. p. 1274. (3) 4 C. J. p. 1068, §3057.

---

## GALBREATH et al. v. OKLAHOMA NATURAL GAS CO. et al.

No. 18150. Opinion Filed Feb. 7, 1928.

Rehearing Denied March 13, 1928.

(Syllabus.)

### 1. Constitutional Provision.

"No grant, extension or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment. Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted." (Section 7 of art. 18, Constitution of Oklahoma).

### 2. Corporation Commission—Power to Regulate Charges for Public Services by Municipalities.

The Corporation Commission has power to regulate the charges for public services by municipal corporations. Such power is inherent in the state, and is a necessary attribute of sovereignty.

### 3. Gas—City's Contract With Gas Company Subject to Modification by State Corporation Commission as to Rates.

"A city in Indian Territory, under power conferred by Mansf. Dig. Ark., sections 749,

754. 755, extended to the territory by Act Cong. May 2, 1890, granted a franchise to a gas company for 25 years embodying a contract by the company fixing the maximum price to be charged for gas to consumers during the term. Held, that such contract was made by the city under its business powers and was binding on the parties, but was subject to modification as to rates by the Corporation Commission of Oklahoma, with the consent of the gas company." (City of Tulsa v. Oklahoma Natural Gas Co., 4 Fed. [2d] 399.)

Error from District Court, Tulsa County; R. D. Hudson, Judge.

Action by Robert Galbreath and others against the Oklahoma Natural Gas Company and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

Mason & Harbison, W. M. Leise, and J. S. Estes, for plaintiffs in error.

Allen, Underwood & Smith, for defendants in error.

HEFNER, J. This suit was originally brought in behalf of the city of Tulsa, C. L. Reeder, John H. Querry, E. E. Short, Charles Haley, W. D. Blacker, Robert Galbreath, W. A. Harbison, and R. C. Mason. The defendants were the Oklahoma Natural Gas Company and the Corporation Commission of the state of Oklahoma. Shortly after the suit was filed all of the plaintiffs, including the city of Tulsa, voluntarily dismissed the litigation except Robert Galbreath, W. A. Harbison, and R. C. Mason.

The suit was for the recovery of large sums of money alleged to have been collected by the gas company from the city of Tulsa and its citizens in violation of the franchise contract of said city with the gas company.

The franchise agreement between the city of Tulsa and the supplying gas company was made in 1903. It provided that the rate the gas company should charge should not exceed 25 cents per thousand cubic feet. The Corporation Commission, after a hearing, authorized the gas company to increase the rate and allowed the gas company to collect more than 25 cents per thousand cubic feet. The Corporation Commission acted under the legislative act of 1913, by which it was given authority to fix such rates. A demurrer was filed by the defendants and was sustained by the court and judgment entered accordingly. The plaintiffs have appealed to this court and for reversal they urge six propositions, four of which are as follows:

"1. That the franchise agreement in controversy, made in 1903, is an absolute and inviolable contract.

"2. That the question of grant of power to Tulsa by Congress or Arkansas or Oklahoma to regulate rates is not involved.

"3. That the rights of both parties under this franchise contract became fixed and vested prior to statehood.

"4. That the legislative act of 1913 of Oklahoma, under which the gas company has changed the 25 cent contract rate, is absolutely void as an impairment of the obligations of that inviolable contract, under the Dartmouth College Case, construing the federal Constitution, and under the Oklahoma Constitution."

These four propositions were first decided by this court in 1920, against the contentions of the plaintiffs herein, in the case of City of Sapulpa v. Oklahoma Natural Gas Co., 79 Okla. 196, 192 Pac. 224.

Both Sapulpa and Tulsa were located in the Indian Territory prior to statehood. Franchises were granted by both cities before statehood. The franchises fixed a maximum rate for the distribution of natural gas to customers in both cities. The Corporation Commission of the state of Oklahoma promulgated an order fixing a rate which the gas company might charge at a figure in excess of the maximum rate provided by the original franchise. The fifth paragraph of the syllabus in the Sapulpa Case, supra, is as follows:

"An order of the Corporation Commission changing the rate to be charged for gas provided by a franchise granted by the city of Sapulpa prior to statehood is not void for impairment of contract rights, as, the United States having granted said franchise through the city as its agent, and upon statehood the state of Oklahoma becoming substituted to the rights of the United States, the state has a right to change the provisions thereof through its representative, the Corporation Commission."

The plaintiffs in the Sapulpa Case sought a writ of error from the Supreme Court of the United States to the Supreme Court of this state. The Supreme Court of the United States dismissed the writ of error in a memorandum opinion. (258 U. S. 608, 66 L. Ed 788.)

Notwithstanding the decision in the Sapulpa Case by both the Supreme Court of Oklahoma and the Supreme Court of the United States, the city of Tulsa, not being satisfied with the decision in the Sapulpa Case, acting in its own behalf, instituted an action in equity in the United States District Court for the Eastern District of Oklahoma wherein it was contended that the orders of the Corporation Commission made

pursuant to the provisions of chapter 93, Session Laws of 1913, were void in that their effect was to impair the provisions of the franchise contract protected by the federal Constitution. The federal court held that the bill of complaint did not state a cause of action, and in the sixth and seventh paragraphs of the syllabus said:

"A state has power over the rights and property of cities which is unrestricted by the contract or due process clauses of the federal Constitution.

"A city in the Indian Territory, under power conferred by Mansf. Dig. Ark. sections 749, 754, 755, extended to the territory by Act Cong. May 2, 1890, granted a franchise to a gas company for 25 years embodying a contract by the company fixing the maximum price to be charged for gas to consumers during the term. Held, that such contract was made by the city under its business powers and was binding on the parties, but was subject to modification as to rates by the Corporation Commission of Oklahoma, with the consent of the gas company." (City of Tulsa v. Oklahoma Natural Gas Co., 4 Fed. [2d] 399.)

This case was appealed by the city of Tulsa to the United States Supreme Court and that court dismissed the appeal for want of jurisdiction. (City of Tulsa v. Oklahoma Natural Gas Co., 269 U. S. 527, 70 L. Ed. 395.)

The same franchise and the same contract were involved in the Tulsa case in the federal court that are involved in the case at bar. The same franchise and the same contract have also been before this court for consideration in the case of the City of Tulsa v. Oklahoma Natural Gas Co., 123 Okla. 176, 252 Pac. 431. This court in the third paragraph of the syllabus said:

"Where, in a city ordinance, a franchise is granted to a gas company, giving to said company permission to lay its gas lines throughout the city, and, among other conditions contained in the ordinance, provides that the price of gas shall at no time exceed 25 cents per thousand feet, held, such provision is nonenforceable in this state under the laws governing public utilities."

These cases and the reasoning therein lead to the conclusion that the issues above relied upon for reversal have already been determined against the plaintiffs.

The principles of law contended for by plaintiffs in error were before this court and before the federal court in the cases referred to above, which courts decided against the contentions of plaintiffs herein and held that the Corporation Commission had authority to make the order complained of.

The contention was clearly made in these cases that the order was void because the effect was to impair the provisions of the franchise contract protected by the federal Constitution. Both the state court and federal court held that such was not the effect of the order. We think the question has been stare decisis in this state since the Sapulpa Case was decided in 1920. However, since that time, the very contract involved in the case at bar has been before both this court and the federal court, and both courts again held against the contentions of the plaintiffs in error herein.

As a further ground for reversal, the plaintiffs in error urge that after statehood, and in 1909, Tulsa, still invested with the inviolable contract right of 25 cents, became a charter city in contradistinction to a legislative city, and thereafter this contract passed beyond the reach and power of any Legislature to alter or amend the same.

Since it has already been determined by both the state court and the federal court that the order of the Corporation Commission did not impair the obligation of a contract and therefore not against the provisions of the Constitution of the United States nor the state of Oklahoma, the only question left for us to determine is whether or not the Corporation Commission has authority to fix rates charged by public service corporations in cities which operate under charter forms of government.

Section 7 of article 18 of the Constitution of Oklahoma is as follows:

"No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment.

"Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted."

Under this provision of the Constitution, the right is clearly reserved to exercise control over the streets, alleys, and public grounds of municipalities. The provision also expressly reserves the right to regulate charges of public service corporations. We do not think the plaintiffs in error contend that the Corporation Commission does not have authority to regulate charges of public service corporations in charter cities. Their contention is that the regulation of rates is not involved because the rights of both parties under the franchise contract became vested and fixed prior to statehood and that

ᴬᴺʸ change in the rate thereafter would be an impairment of a contract. Since we hold that this question has been determined against the contention of the plaintiffs in error in former decisions, not only of this court but by the federal court, it cannot be successfully contended that the Corporation Commission does not have authority to fix the rates in cities operating under a charter form of government.

That the Corporation Commission of the state of Oklahoma was vested by chapter 93 of Session Laws 1913, section 3463, C. O. S. 1921, with jurisdiction and authority to make rates for public utilities, was clearly laid down in the case of City of Pawhuska v. Pawhuska Oil & Gas Co., 64 Okla. 214, 166 Pac. 1058. This court, in the fifth paragraph of the syllabus, said:

"The power to regulate the charges for public services by municipal corporations is the power which it was the intention of the framers of the Constitution should be exercised by the sovereign power only. Such power is inherent in the state, and is a necessary attribute of sovereignty."

The power to fix rates for public service corporations is a necessary attribute of sovereignty. The fact that the city of Tulsa is operating under a charter form of government can make no difference. Since the right to fix rates for public service corporations is inherent in the state, the Corporation Commission is given authority under the above act to fix such rates in all cities in the state.

Since the Corporation Commission had authority under the Constitution and under the statutes to make the order complained of, the trial court committed no error in upholding the same, and its judgment is accordingly affirmed.

BRANSON, C. J., MASON, V. C. J., and PHELPS, and HUNT, JJ., concur.

Note.—See under (1) 43 C. J. p. 287, §304 (Anno). (2) 43 C. J. p. 286, §304. (3) 28 C. J. p. 577, §39.